UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Kirk Wool,

      Plaintiff,

v.

Case No. 2:11-cv-188

Vermont Department of
Corrections, Corrections
Corporation of America,
and Mark King,

      Defendants.

## REPORT AND RECOMMENDATION
(Doc. 9)

      Plaintiff Kirk Wool, a Vermont inmate proceeding *pro se*, brings this action claiming that the Vermont Department of Corrections ("DOC") transferred him from Kentucky to Vermont in retaliation for his complaints about prison conditions. Pending before the Court is Wool's motion for preliminary injunctive relief, in which he seeks the return of various legal files. For the reasons set forth below, I recommend that Wool's preliminary injunction motion (Doc. 9) be DENIED.

### Factual Background

      The facts of this case began when Wool was incarcerated in a privately-owned prison facility in Kentucky. The State of Vermont houses some of its inmates in Kentucky pursuant to a contract with Corrections Corporation of America ("CCA"). The original Defendants in the case were CCA, the DOC, and inmate Mark King.

Wool alleges that between September 2010 and March 2011 he wrote letters of complaint to the Department of Homeland Security ("DHS"), criticizing the federal government's award of a large contract to CCA. The letters allegedly warned that CCA's "abuses against Vt. inmate[s]" might also be visited upon federal inmates. (Doc. 6 at 2.) On March 11, 2011, Wool allegedly sent another letter to DHS "pointing to [the Kentucky prison's] forced celling of inmates [] thereby creating a hostile prison environment." *Id.* at 3. Wool also sent a petition to elected officials in Vermont protesting the DOC's proposed transfer of inmates from Kentucky to a facility in Virginia. Wool alleges that he provided copies of each of his letters, and the petition, to prison officials and/or the DOC.

Wool further claims that inmate King, a former Vermont prison guard, provided false information to Kentucky prison officials. That information included King's claim that Wool was part of a group intending riot and harm certain guards. With respect to Wool's letter writing, King reportedly told Wool that CCA was "all but fed up with my letter writing" and warned him to "be careful." *Id.* at 2.

On March 14, 2011, Wool was allegedly handcuffed and taken to segregation, where he was told he would be held pending his immediate return to Vermont. Wool had not anticipated a transfer, and alleges that it occurred shortly after prison officials received his most recent letter to DHS. When Wool arrived in Vermont, he was allegedly advised by a prison Superintendent that his "transfer was a hush-hush Central Office decision and Central Office had warned I not be told any reason for my transfer." *Id.* at

5. Wool thus contends that his transfer was retaliatory, and that he has been punished for exercising his First Amendment rights.

Pending before the Court is Wool's motion for preliminary injunctive relief relating to the alleged confiscation of his legal materials. The motion claims that when Wool was transferred from Kentucky to Vermont, "over a hundred files and/or folders comprising present and ongoing legal work" were confiscated by prison officials. (Doc. 9 at 1.) Wool explains in a subsequent affidavit that he was employed at the Kentucky prison as an Inmate Grievance Aide, was a certified Inmate Legal Assistant ("ILA"), and also served as an inmate advocate. (Doc. 14.) Accordingly, in addition to his own legal files, many of which pertained to his various state court cases, several of the files in question contained legal work performed on behalf of other inmates. (Doc. 9 at 2-3.)

Wool has attached to his motion two pieces of correspondence with DOC Legal Education Director Carol Callea. In one such letter, dated June 9, 2011, Wool states that his "'friends' at LAC have decided none of [the legal work] is mine saying the captions have other peoples' names." (Doc. 9-2 at 1.) Callea appears to respond, in a handwritten note on the same letter, that she sent e-mails to Kentucky asking prison officials to check the prison computers for Wool's legal files. *Id.* Callea also notes that Wool's work performed for others was delivered to those individual inmates. *Id.* at 2. With respect to a lime green folder that allegedly contained Wool's correspondence with DHS Secretary Napolitano, Callea states that the folder and one of Wool's journals were both given "to prop officer." *Id.* at 1.

3

Since commencing this case, Wool has dismissed CCA as a Defendant. (Doc. 26.) Although he also noticed the dismissal of Mark King, Wool recently filed a motion to retain King as a Defendant. (Doc. 35.)

## Discussion

A preliminary injunction is an extraordinary remedy that should not be granted as a routine matter. *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986). To warrant preliminary injunctive relief, the moving party must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). *see also Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 172 (2d Cir. 2001). Where the requested injunction will alter, rather than maintain, the *status quo*, the movant faces a more rigorous standard with respect to the "merits" prong of the analysis: he must make a "clear" or "substantial" showing of likelihood of success. *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 149-50 (2d Cir. 1999); *see also Lennon v. Premise Media Corp., L.P.*, 556 F. Supp. 2d 310, 318-19 (S.D.N.Y. 2008).

In its opposition to the preliminary injunction motion, the DOC argues, in part, that the legal materials in question do "not pertain to the issues raised in the instant matter." (Doc. 15 at 2.) Indeed, courts have held that a motion for preliminary injunctive relief must relate to the allegations contained in the underlying complaint. *See, e.g., McAllistor v. Goord*, 2009 WL 5216953, at *2 (N.D.N.Y. Dec. 30, 2009); *McKinnon v.*

4

*Tresman*, 2004 WL 78091, at *1 (D. Conn. Jan. 9, 2004). Wool's underlying claim in this case is one of retaliatory transfer.

In response to the DOC's argument, Wool argues that "the ongoing confiscation of my legal files was and is a continuation of the Defendants' retaliation against me for exercising my 1st Amendment rights." (Doc. 16 at 1.) Nonetheless, if the Court accepts the proposition that a motion for injunctive relief must relate to the harm alleged in the Complaint, the alleged confiscation of legal files is not a part of Wool's retaliatory transfer claim, and his motion should be DENIED.

Furthermore, Wool has not shown a likelihood of success. His most specific allegations focus on law library supervisor David Frye and inmate Mark King. (Doc. 14 at 1-2.) Frye has allegedly assigned King the duty of copying inmate legal files to computer disks when inmates are transferred. *Id.* at 2. Thereafter, according to Wool, "[t]he only people who have transient possession of the legal work CD [are] King and the property officer." *Id.*

The first question posed by these allegations is one of personal jurisdiction. The Court must have jurisdiction over a person before it can validly enter an injunction against him or her. *See United States v. Paccione*, 964 F.2d 1269, 1275 (2d Cir. 1992); *Doctor's Assocs., Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302 (2d Cir. 1999); *see also* 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2956, at 335 (2d ed. 2001) ("A court ordinarily does not have power to issue an order against a person who is not a party and over whom it has not acquired *in personam* jurisdiction."). Here, Wool has not shown that the Court has personal

jurisdiction over CCA officials in Kentucky. *Cf. Malone v. Frank*, 2007 WL 2362574, at *6 (W.D. Wis. Aug. 14, 2007) (noting that Wisconsin federal court might not have jurisdiction over CCA officials in Oklahoma). Without such a showing, it cannot order injunctive relief against Frye, the property officer, or any other CCA official employed at the Kentucky facility.

Second, it is not clear whether Wool is seeking injunctive relief against King himself. In fact, his reply memorandum directly blames CCA and DOC for the confiscation, stating that "under no circumstances would King be allowed to act to deny return of the legal files. That act could be only carried [out] by [the Kentucky prison]/DOC.")  (Doc. 16 at 1.)

Finally, with respect to the DOC, it appears that Carol Callea has made efforts on Wool's behalf. Aside from the references to Callea, Wool makes only broad and conclusory allegations of DOC wrongdoing. *See id.* Absent more specific allegations against the DOC, Wool has not shown a likelihood – clear or otherwise – of success. *See Line Communications Corp. v. Reppert*, 265 F. Supp. 2d 353, 358 (S.D.N.Y. 2003) ("A preliminary injunction will not be awarded unless the rights of the parties are indisputably clear.") (internal quotation and citation omitted); *see also Tusino v. Int'l Bhd. of Teamsters*, 928 F. Supp. 319, 330 (S.D.N.Y. 1996) (conclusory allegations insufficient to show likelihood of success on merits).

Wool must also demonstrate that he has suffered, or will imminently suffer, actual harm to the extent that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Faiveley Transport Malmo AB v. Wabtec*

*Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) ("'irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'") (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). To show irreparable harm, he must "demonstrate 'an injury that is neither remote nor speculative, but actual and imminent' and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (internal citation omitted)).

In his reply memorandum, Wool contends that "I do allege and can prove irreparable harm – many of the documents are or will be exhibits and/or evidence in the present case, other pending state actions or future actions I was pursuing as an ILA and as a Plaintiff personally." (Doc. 16 at 3.) These statements, while addressing the question of irreparable harm generally, do not show the Court a specific, imminent harm that will be suffered. Moreover, Wool concedes that with respect to at least some of the materials in question, the cases are being brought – and any harm would thus be suffered -- by others. I therefore recommend that the Court DENY Wool's motion for emergency injunctive relief without prejudice.

## Conclusion

For the reasons set forth above, I recommend that Wool's preliminary injunction motion (Doc. 9) be DENIED without prejudice.

Dated at Burlington, in the District of Vermont, this 15th day of November, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

7

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).