UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Kirk Wool,

    Plaintiff,

    v.                                    Case No. 2:11-CV-188

Vermont Department of Corrections,
Corrections Corporation of America,
and Mark King,

    Defendants.

## REPORT AND RECOMMENDATION
(Docs. 32, 35, 44, 47 and 48)

Plaintiff Kirk Wool, a Vermont inmate proceeding *pro se*, brings this action claiming that the Vermont Department of Corrections ("DOC") transferred him from Kentucky to Vermont in retaliation for his complaints about prison conditions. Shortly after commencing this case, Wool voluntarily dismissed Defendants Corrections Corporation of America ("CCA") and inmate Mark King. Wool now moves to reinstate inmate King as a Defendant. (Doc. 35.) King has filed a motion to dismiss, and opposes reinstatement. (Docs. 32 and 44.) Also before the Court are Wool's motions to amend his Complaint to add a second retaliation claim, and for *in camera* review of all documents pertaining to his transfer. (Docs. 47 and 48.)

For the reasons set forth below, I recommend that the motion to reinstate be GRANTED, and that King's motion to dismiss be DENIED. Wool's motion to amend his Complaint is GRANTED, and his motion for *in camera* review is DENIED. If this

Report and Recommendation is adopted by the Court, I recommend that Wool be required to file an Amended Complaint that includes all parties and claims, and thus completely supersede the initial Complaint.

**Factual Background**

The facts of this case begin with Wool's incarceration in a privately-owned prison facility in Kentucky. The State of Vermont houses some of its inmates in Kentucky pursuant to a contract with CCA. Wool alleges that between September 2010 and March 2011, he sent letters to the Department of Homeland Security ("DHS") criticizing a large contract that the federal government had awarded to CCA. The letters warned that CCA's "abuses against Vt. inmate[s]" might also be visited upon federal inmates. (Doc. 6 at 2.)

On March 11, 2011, Wool sent another letter to DHS "pointing to [the Kentucky prison's] forced celling of inmates [] thereby creating a hostile prison environment." *Id.* at 3. Wool also sent a petition to elected officials in Vermont protesting the DOC's proposed transfer of inmates from Kentucky to a facility in Virginia. Wool claims that he provided copies of each of his letters, and the petition, to CCA prison officials and/or the DOC.

With respect to inmate King, a former Vermont prison guard, Wool claims that King communicated false information to prison personnel at the Kentucky facility. That information included an allegation that Wool was part of a group intending to start a riot. King also reportedly told Wool that CCA was "all but fed up with [his] letter writing" and warned him to "be careful." *Id.* at 2.

On March 14, 2011, Wool was allegedly handcuffed and taken to segregation, where he was told he would be held pending his immediate return to Vermont. Wool had not anticipated a transfer, and claims that it occurred shortly after prison officials received his most recent letter to DHS. Shortly before his departure from Kentucky, Wool was allegedly told by prison staff that "'you have Mark King to thank for this.'" (Doc. 6 at 4.)

Wool claims that when he arrived in Vermont, he was advised by a prison Superintendent that his "transfer was a hush-hush Central Office decision and Central Office had warned I not be told any reason for my transfer." *Id.* at 5. Wool thus contends that his transfer was retaliatory, and that he was punished for exercising his First Amendment rights. He further claims that his transfer was "aided and abetted by lies by Mark King," and that King lied in order to "gain continued favor from CCA." (Doc. 6 at 5.)

## **Procedural History**

Wool filed this case on July 28, 2011. On October 18, 2011, he filed a "Notice of Matter of Right Amendment that dismisses without prejudice CCA as Defendant and without prejudice, Mark King, as Defendant." (Doc. 26 at 1.) In dismissing the two Defendants, Wool asserted that "[n]othing CCA did touching the facts of this case could have been carried out nor continue to be carried out without DOC['s] full blessing and cooperation." (*Id.*) Although he did not specifically explain why he was dismissing Defendant King, Wool did allege that "DOC knew and knows CCA fabricated allegations . . . ." (*Id.*) King and CCA were thus dismissed from the case without prejudice.

3

It appears that Defendant King did not receive the notice of dismissal initially, because on November 7, 2011 he filed a motion to dismiss. (Doc. 32.) On November 14, 2011, after receiving King's motion to dismiss, Wool moved to "continue Defendant King as Defendant" and for an enlargement of time in which to oppose the motion to dismiss. (Doc. 35 at 1.) Wool explained in his motion that he wished to reinstate King as a party because King had been served with the Complaint and had filed a responsive motion. (*Id.*)

Wool's motion to reinstate and King's motion to dismiss are now before the Court, as is Wool's motion to amend his Complaint (Doc. 47) to add a second retaliatory transfer claim. This second transfer, effected in December 2011 (Doc. 46), moved Wool from Vermont's Northern State Correctional Facility ("NSCF") to its Southern State Correctional Facility ("SSCF"). The final motion before the Court, as noted above, is a request to forgo discovery and to instead have the DOC submit all relevant documentation to the Court for *in camera* review. (Doc. 48.)

## Discussion

### I. King's Reinstatement

Because inmate King was previously dismissed from this case without prejudice, the Court should construe Wool's motion to reinstate as a motion to amend under Fed. R. Civ. P. 15. *See, e.g., Gortat v. Capala Bros., Inc.*, 2011 WL 6945186, at *8 (E.D.N.Y. Dec. 30, 2011) (construing motion to reinstate claim for liquidated damages as motion to amend complaint). Rule 15 states that after being allowed one amendment as a matter of course, "a party may amend its pleading only with the opposing party's written consent

or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend a pleading should therefore be freely granted, absent a showing of excessive delay, undue prejudice to the opposing party, bad faith, or futility. *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009); *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

King argues that Wool's motion to reinstate is merely an effort to "further vex and harass Defendant King with dilatory pleadings." (Doc. 44 at 2.) He also submits that Wool is retaliating for statements made in King's motion to dismiss. (*Id.* at 4.) King does not argue that reinstatement would cause him undue prejudice.

King's motion to dismiss argues that the Court lacks jurisdiction to hear Wool's claims. The motion also argues that Wool has failed to state a claim for which relief can be granted. (Doc. 32.) Because a court may deny a motion to amend if the amendment would be futile, the Court will review these arguments as they pertain to the motion to amend/reinstate. *Cf. Lucente*, 310 F.3d at 258 (amendment is futile if proposed claim would not withstand a motion to dismiss).

King's first argument for dismissal is that, as a private party, he cannot be sued under 42 U.S.C. § 1983. King is correct that, in general, § 1983 liability is reserved for state actors and does not apply to private conduct. *See United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir. 1991). In his opposition to the motion to dismiss, Wool responds by stating that his "state tort claim against King [should] be allowed to proceed as the state claim is fully on point with the federal question." (Doc. 40 at 1.)

If Wool intends to amend his Complaint to bring a tort claim against King, the next question is whether the Court can exercise subject matter jurisdiction over the tort claim. Under 28 U.S.C. § 1367(a), "a district court has 'supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy' once original jurisdiction is established." *Cicio v. Does*, 321 F.3d 83, 97 (2d Cir. 2003) (quoting 28 U.S.C. § 1367(a)), *vacated on other grounds by* 542 U.S. 933 (2004). "A state law claim forms part of the same controversy if it and the federal claim 'derive from a common nucleus of operative fact.'" *Id.* (quoting *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 165 (1997)).

Whether state and federal claims arise out of a common nucleus of operative fact generally depends on the degree of factual overlap between those claims. *See Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.*, 605 F.2d 1228, 1247 (2d Cir. 1979). Here, Wool's claim of unconstitutional retaliation is very much intertwined with his claims against King, as he claims King provided some of the information that gave rise to the allegedly retaliatory transfer. The Court should therefore find that these claims arise out of a common nucleus of operative fact.

King argues that supplemental jurisdiction is inappropriate because he is not a state actor, and because there is no basis for diversity jurisdiction. However, since the passage of 28 U.S.C. § 1367, federal courts have been empowered to exercise "pendent-party jurisdiction" when a plaintiff appends a state law claim, arising from a common nucleus of facts, against a defendant who could not otherwise be sued in federal court.

6

*See Ansuomana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 92-93 (S.D.N.Y. 2001); *see also Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 587 (2005) (Ginsberg, J., dissenting) ("The Court is unanimous in reading § 1367(a) to permit pendent-party jurisdiction in federal-question cases . . . ."). Accordingly, the Court may exercise subject matter jurisdiction over Wool's proposed tort claim against King.

King also argues that Wool's First Amendment retaliation claim lacks substantive merit. Because Wool has since clarified that he is suing King under state tort law, and not federal law, the Court need not address the merits of the constitutional claim at this time.

Finally, King has submitted an affidavit from another inmate, John Barbera, in which Mr. Barbera states that King was probably not responsible for Wool's transfer. (Doc. 32-2) ("I believe [Wool] became a thorn in the side of many staff here at Lee Adjustment Center, and although I have no way of knowing I believe that is what contributed to his transfer.") To the extent that the Barbera affidavit may be germane to Wool's claims against King, it goes beyond the pleadings and thus cannot be considered in the context of a motion to dismiss. *See* Fed. R. Civ. P. 12(d) (allowing federal courts to either exclude matters outside the pleadings, or treat a motion to dismiss as one for summary judgment); *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988).

In sum, the Court should find that if Wool amends his Complaint to add a state law tort claim against King, there is subject matter jurisdiction. Furthermore, King has failed to show that such a tort claim would be futile. *See Semper v. N.Y. Methodist*

7

*Hosp.*, 786 F. Supp. 2d 566, 582 (E.D.N.Y. 2011) ("The non-moving party bears the burden of demonstrating why leave to amend should be denied on futility grounds."). I therefore recommend that Wool's motion to amend his Complaint and reinstate King as a Defendant (Doc. 35) be GRANTED, and that King's motion to dismiss (Doc. 32) be DENIED. King's motion to strike (Doc. 44), which argues against reinstatement, should also be DENIED.

## II. Motion to Amend to Add New Retaliation Claim

Wool has also moved to amend his Complaint to add a second retaliatory transfer claim. The claim would allege that while housed at NSCF, he was told by the Chief of Security: "I'm done with you. I've had calls from Central Office and everyone else about you. . . . You can file your lawsuits and complaints from down south." (Doc. 47 at 1.) Wool claims that he was transferred the next day to SSCF, in retaliation "for having filed lawsuits and made complaints about conditions at NSCF and Scott Morley in particular." (*Id.*) The new claim would sue Morley, who is presumably a DOC employee, in his individual capacity.

Under Rule 15's liberal standard for the amendment of pleadings, Wool should be allowed to add this new claim. The existing parties will not be prejudiced, as there has been relatively little discovery in the case thus far, and even those efforts were initiated by Wool himself. There is also no indication of undue delay, and no argument regarding futility. In fact, the motion is unopposed. Wool's motion to amend (Doc. 47) is therefore GRANTED, and Morley shall be added as a defendant in this case.

### III. Motion for *In Camera* Review of Relevant Documents

The final matter before the Court is Wool's motion for *in camera* review of all relevant documents "for expedited resolution of this case." (Doc. 48 at 1.) Wool claims that with such a review, Defendants will not have "to challenge release of the records to me based on claims of security to keep or delay the records from review." (*Id.*) He also suggests that the DOC's disclosure of information will be more truthful and forthcoming if made directly to the Court, and not through the ordinary course of discovery. The motion also appears to include a settlement offer. (*Id.* at 3-4.)

Wool does not cite any law in support of his request for an *in camera* review. Nor does he explain why this case should be distinguished from all other civil litigation, prisoner or otherwise, for which there is a well-established set of rules governing discovery. To date, the Court is not aware of any documents withheld in this case on the basis of security concerns, and if a security-related issue should arise, it can be addressed under the Federal Rules of Civil Procedure and related case law. With respect to concerns about truthfulness, the DOC is no doubt aware of its obligation to provide full and truthful discovery. The motion for *in camera* review (Doc. 48) is therefore DENIED.

### Conclusion

For the reasons set forth above, I recommend that Wool's motion to reinstate (Doc. 35) be GRANTED, and that King's motions to dismiss (Doc. 32) and to strike (Doc. 44) be DENIED. Wool's motion to amend his Complaint to add a second retaliation claim (Doc. 47) is GRANTED, and his motion for *in camera* review (Doc. 48) is DENIED. Finally, if this Report and Recommendation is adopted by the Court, I

recommend that Wool be required to file an Amended Complaint that includes all parties and claims, and thus completely supersedes the initial Complaint, within a period of time to be determined by the Court.

Dated at Burlington, in the District of Vermont, this 6th day of April, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).